UNITED STATES DISTRICT AND BANKRUPTCY COURTS FOR THE DISTRICT OF COLUMBIA



**FILED**
OCT 1 4 2015
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Monica E. Santiago
402 Ben Neuis Place
Fredericksburg, VA 22405

VS.

Case: 1:15-cv-01680
Assigned To : Cooper, Christopher R.
Assign. Date : 10/14/2015
Description: Employ Discrim. (H)

Nancy C. Ware, Director
Court Services and Offender Supervision Agency
633 Indiana Ave
Washington, DC 20001

**JURY ACTION**

## COMPLAINT

### HARASSMENT PRETEXT TO DISCRIMINATION ,HIPPA VIOLATIONS, BULLYING AND OTHER UNLAWFUL PRACTICES

### CSOSA EMPLOYEES PERJURED THEMSELVES UNDER OATH TAKEN BY THE AGENCY CONTRACT INVESTIGATOR ERAKA ROBERTS

Court Services and Offender Supervision Agency is a small independent agency which falls directly under the executive branch, prior to the harassment, I had always taken pride in telling my family and friends how special we were. It wasn't until I had to utilize administrative processes, both internally and externally did I realize the true nature of its



RECEIVED
SEP - 4 2015
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

1

independence. No real oversight. This allowed them to continually violate federal laws and statutes without consequence, and staff were limited in the ability to obtain real protection. CSOSA has a legal responsibility of upholding the law not violating them as they see fit. It sends a terrible message to the offenders supervised when the very managers given supervision authority hold themselves above the law.

## CSOSA falsified documents to the EEOC regarding the actual number of formal complaints filed

I did not want to file a complaint against Mr. Williams, I did everything in my power to avoid it, I made inquiries in other departments for a position, I also discussed the possibility of working with Chairman Fulwood of the USPC. Chairman Fulwood had expressed a need for someone to develop a mental health treatment program.

During the entire time that I was subjected to the harassment Ms. Adrienne Poteat Acting Director had complete and absolute authority to interfere with any and all protected activities within the agency, which she did in each instance pertaining to me.

I was subjected to bullying on a daily basis by management from February 2010 thru January 27, 2012. The continued harassment and bullying was done by , Associate Director of Community Supervision Services, Thomas Williams, and his Executive Assistant Debra Kafami, Adrienne Poteat, and other management staff, including executive staff.

1. **77. THE AGENCY'S RESPONSE WELL MANUFACTURED AND FALSE TO HIDE TRUE INTENT, AS EVIDENCED BY THE SUPPORTING DOCUMENTS**

The agency provided inconsistent statements noted throughout the Record of Investigation to hide their true intent. The attached documents shows an inexplicable deviation from standard practices, as it continually violated it's own internal policies and procedures

2. **AGENCY FAILED TO SAFEGUARD MY MEDICAL DOCUMENTS, WHEN DEBRA KAFAMI EXECUTIVE ASSISTANT TO THE AD THOMAS H. WILLIAMS LET MY DOCUMENTS AND LETTERS FROM MY PSYCHIATRIST ON THE PRINTER LOCATED IN HER SUITE, AND TO COVER THE MATTER UP, SHE ACCUSED ME OF HAVING LEFT IT.**

I was teleworking from home the day I received an email from Ms. Kafami indicating the violation noted above. I also had not been in the office for 2 days. Staff do not have access to the server or any printer while working from home, we are given a token to log into the computer system.

3. **EXECUTIVE ASSISTANT DEBRA KAFAMI ACCUSED ME OF VIOLATING THE CEASE AND DESIST ORDER DURING A USPC SANCTION REPRIMAND HEARING, THIS FALSE ACCUSATION ALSO LED TO AN OFFICE OF PROFESSIONAL RESPONSIBILITY INVESTIGATION OF MISCONDUCT FOR SAID ALLEGED VIOLATION**

Ms. Kafami made a false statement accusing me of discussing Mr. Williams during a USPC Sanction reprimand hearing, as she states that the Community Supervision Officer noted said statement in the running record. The USPC Commissioner was in attendance at the hearing and confirms that there was no engagement of conversation about Mr. Williams directly. The agency never notified the agency of my temporary reassignment to

Ms. Kafami, and staff naturally assumed that I was operating in my regular capacity of Special Assistant to the Associate Director, Thomas H. Williams.

## 4. AGENCY FAILED TO NOTIFY THE AGENCY STAFF OF THE INTERIM REASSIGNMENT TO EXECUTIVE ASSISTANT DEBRA KAFAMI, SO THAT THEY COULD CONTINUE THE BULLYING UNOBSERVED

Adrienne Poteat repeatedly refused to remove me from harm and advised other senior management staff that I was to remain in Community Supervision Services, which is directly under Thomas H. Williams Span of Control, knowing all the while that he would have direct access to me by way of his Executive Assistant Debra Kafami.

## 5. THOMAS H. WILLIAMS PROVIDED FALSE STATEMENTS IN THE RECORD OF INVESTIGATION.

Mr. Williams alleges to having not engaged in any conversations regarding the supervision of me under Ms. Kafami, however in the his sworn testimony he clearly states that he provided information directly to Ms. Kafami regarding my status of reassignment to her along with my duties.

## 6. ADRIENNE POTEAT MADE FALSE STATEMENTS IN THE RECORD OF INVESTIGATION THAT SHE BECAME AWARE OF MY DISABILITY BASED UPON THE NUMEROUS COMPLAINTS FILED, AND THAT SHE HAD NO PRIOR KNOWLEDGE THAT I WAS BEING HARASSED.

I disclosed my cancer diagnosis publicly at the Combined Federal Campaign Close Out Celebration on February 21, 2010, or February 22, 2010. Executive Staff and other

management staff were in attendance, which included Beverly Hill Chief of Staff, Thomas H. Williams, Delilah Calvert, as well as others.

On November 22, 2010, I sent Ms. Poteat a personal text message indicating that I felt uncomfortable meeting with the AD Williams alone, and requested a neutral third party, to which she responded that I needed to continue meeting with AD Williams as previously done in the past 1 on 1, and having a third party would muddy the waters.

## 6. AGENCY FAILED TO REMOVE ME FROM HARM

Despite my multiple requests to be transferred, Ms. Poteat refused to temporarily reassign me to another department or agency fully knowledgeable about the ongoing bullying behavior by Mr. Williams, and continued by Debra Kafami. Although Mr. Williams was removed as my first line supervisor Ms. Kafami still reported directly to Mr. Williams. Ms. Poteat's testimony indicates otherwise, as she too provided false statements under oath. I have text messages sent to her phone, expressing growing concerns about Mr. Williams specifically I requested that a third party be present during my meeting with him to which she stated "that would be muddying the waters, and that I needed to continue to meet 1 on 1 as I had been doing in the past." Her response created additional grave concerns for my welfare. As the daily task of performing my job had become likened to navigation thru a pool of circling sharks, each taking little bites. So I pretended that I was appreciative. I had even requested to be detailed to the CFC, as it would have been the perfect fit for me and the agency, EEO Director Vernon Best agreed, however when he presented this to Ms. Poteat she denied the request.

## 7. AGENCY VIOLATED THEIR NO FEAR ACT POLICY RECEIVED AN UNDESIRABLE REASSIGNMENT

Agency violated its own No Fear Act policy by giving me an ~~undesirable~~ *involuntary* reassignment, which also included the discontinuation of certain privileges as Special Assistant to the Associate Director, namely I was never subjected to scrutiny or surveillance prior to the start of his harassing behaviors, I was allowed to attend various trainings specialized and other throughout the agency as well as outside of the agency. My time was never questioned when I work beyond the regular tour of duty to complete various assignments, I was allotted an hour for lunch, I was not required to be monitored when I arrived or left for the day. I had been able to attend all management meetings with other members in Mr. Williams' immediate suite. I was prohibited from requesting regular items and or assistance from the administrative staff in Mr. Williams' office as it pertained to my daily job functions. I was denied access to certain supplies, I was also prohibited from leaving 300 Indiana Ave without prior approval.

## 8. DENIED REASONABLE ACCOMMODATIONS

My doctors were angered by the disregard of their medical professional opinions, and identified the manipulation illustrated by the agency in an effort to keep me in a hostile work environment.

## 9. AD THOMAS H. WILLIAMS FAILED TO ADHERE TO THE MEDICAL RECOMMENDATIONS FROM MY ONCOLOGIST

My Oncologist said that I would be re-evaluated after six months, Mr. Williams stated that he wanted an update from my Oncologist in 90 days. The reasonable accommodation

6

letter drafted and signed by Mr. Williams clearly provides his personal reason. As Ms. Williams did not want to grant this accommodation, demonstrated by his lack of response to my requests, both verbal and by email. He denied ever receiving my email request.

## 10. AGENCY PROVIDED FALSE RATIONALE TO OBTAIN ADDITIONAL MEDICAL RECORDS

The agency alleged that it needed documentation to determine what limited abilities if any that I had, which might interfere with my ability to perform my duties, at the USPC or otherwise. The agency's real intention was predicated on a lie told by Ms. Kafami to management stating that I was suffering from paranoia.

## 11. AGENCY FAILED TO ACT EXPEDITIOUSLY UPON RECEIPT OF DEMANDED MEDICAL DOCUMENTS

Following my submission of the requested medical document from my primary care physician not oncologist, the agency failed to take action for 3 weeks. Another clear indication to hide their real intent for requesting these forms.

## 12. AGENCY NEGLECTED TO PROVIDE THE COMPLETE DETAILS OF DENIAL OF MY REASSIGNMENT TO THE USPC

Agency states that I denied a detail to the USPC, which is partially true, I verbally accepted the detail until I was advised that both Thomas Williams and Adrienne Poteat had both been involved in the decision, it sent red flags to me. As such I contacted Dr. Calvin Johnson via telephone. I asked Dr. Johnson how many AVRs did the agency process on a daily and weekly basis. He then asked if the job description he had created for Ms. Poteat was for me, I told him yes. He said you are going to need help doing that job, you cannot

7

perform the job without administrative support. He further stated that although I might be able to keep up with the daily intake of alleged violation reports, he says and I quote, " you need to worry about that 500 to 600 we have in backlog, that's where you are gonna get dinged." Have been made fully aware of this detail, I declined it. I told Ms. Poteat that my doctor stated that I was not to be subjected to ongoing stress, as it would continue to jeopardize my recovery. I also stated to Ms. Poteat that I was willing to consider the detail to the USPC provided she modified the terms of the detail, at which point she stated, " are you denying the detail?", I said "no, I am denying the detail as written.". She repeated the question back to me stating , " am I to understand that you are denying this detail to the USPC?" I again stated "no I am not denying the detail to the USPC, I am denying the detail duties outlined in this description, I would gladly consider it if you modify the terms. As it is currently outlined, there would be no way humanly possible for me to complete the duties of the detail as written." Please note, I did not advise Ms. Poteat that I had spoken to Dr. Johnson prior to my meeting with her.

### 13. AGENCY ISSUED A CEASE AND DESIST ORDER CONTAINING MORE RESTRICTIONS FOR ME THAN CDO DELIVERED TO AD WILLIAMS

The reason given in the record of investigation contradicts the order itself and they should have been written with the same restrictions, and not based upon his professional standing.

### 14. DEBRA KAFAMI CONTINUED TO REPORT TO HER IMMEDIATE SUPERVISOR THOMAS H. WILLIAMS, AS HE WAS HER FIRST LINE SUPERVISOR

Throughout the entire time that I had been temporarily reassigned to Ms. Kafami, she continued to report to Mr. Williams her immediate supervisor on a daily basis. Most of these meetings occurred behind closed doors, per the secretary.

### 15. EXECUTIVE ASSISTANT TO AD WILLIAMS DENIES DISCUSSING MY CASE WITH HER IMMEDIATE SUPERVISOR THOMAS H. WILLIAMS

This is also a manufactured statement. How could Ms. Kafami perform her daily duties without receiving instructions and guidance including guidance on handling me. If the true intention of the agency was to remove me from harm, they would have relocated me to a different department or allowed a real not illusory detail, under the guise of adhering to policy.

### 16. AGENCY PROVIDED FALSE STATEMENTS TO MY CONGRESSMAN REGARDING THE HANDLING OF MY COMPLAINT AND ONGOING HARASSMENT

On the same day the agency presented me with a list of open positions, only the list was misleading, the job I selected was "not available", so there was no true offer. The agency wanted me to take a position in facility as it was the only available other option, however this position required that I manage a fleet of automobiles, some of the duties required me to maintain the service and cleaning of the vehicles, and was a GS-11, I advised the agency that the ADAA did not require that I take a demotion to obtain a temporary reassignment. At which time it was crystal clear that the agency was going to continue the bullying until they could find or manufacture grounds to terminate my employment, evidenced by the heightened scrutiny by Ms. Kafami, and her continuance of making false

9

accusations about my performance, and daily duties performed, or ultimately force me to medically retire. Associate Director Cedric Hendricks responded to my congressional inquiry on the same day.

## 17. EEO DIRECTOR DISMISSED THE BULK OF THE COMPLAINTS WHICH CLEARLY DEFINED AN ONGOING PATTERN OF BULLYING BY AD THOMAS WILLIAMS, AS DISCRETE ACTS

This ruling is manufactured as well, as the EEO Director reported directly to Ms. Poteat. These violations support a pattern of continued bullying behaviors by Thomas H. Williams and other management personnel

## 18. AGENCY RESPONSES AS LEGITIMATE NON DISCRIMINATORY REASONS CONTAIN MULTIPLE INCONSISTENCIES, AS EVIDENCED BY THE RECORD OF INVESTIGATION AND EMAIL HARD COPIES

## 19. AD THOMAS H. WILLIAMS VIOLATED THE AGENCY'S TELEWORK POLICY

Mr. Williams required that I submit a daily report of assignments completed, and this was in direct violation of the telework policy. Staff are in full work status when telecommuting from home. Mr. Williams disagreed with the teleworking policy as he believed that an employee could not conduct a full day of work from home.

## 20. AD THOMAS H. WILLIAMS VIOLATED THE ADA

Mr. Williams continuously violated the statutes and terms of the American Disability Act Amended, when I offered him a copy he shrugged it off saying he didn't need it.

## 21. AGENCY EEO DIRECTOR FAILED TO RECUSE HIMSELF AS DECIDING OFFICIAL ONCE HE BECAME A NAMED PARTY IN THE COMPLAINT

Once the EEO Director compromised his ability to act impartially, he continued to process decisions in my complaint. He also interfered with the process at the onset. He told me that if I filed a formal complaint against Mr. Williams, that it would become a case of the agency against me. He also expressed his concerns for Mr. Williams reputation, he stated that Mr. Williams felt that as long as this case was open that he would have a black cloud over his head. To which I responded, but Mr. Williams didn't have cancer, I did.

## 22. AGENCY'S REFUSAL TO REMOVE ME FROM HARD LEAD TO UNNECESSARY ADDITIONAL SURGERY THOUGHT TO BE A RECURRENCE OF CANCER

On April 25, 2011 I had surgery to remove lumps thought to be a recurrence of cancer.

## 23. DEBRA KAFAMI TRIED TO BLOCK ANY AND ALL TRAINING

On the first day of the Project Management Training Ms. Kafami was texting and calling trying to locate me. When she realized that I was in the PMT training, she contacted IT Deputy Director Jennifer Epps to request that I be removed from the training, she also contacted the Director of Training Delores Thornton to have me removed, but was informed that it was a very expensive training and the agency would lose a considerable amount of money if I were to withdraw.

## 24. THOMAS WILLIAMS TRIED TO BLOCK ADDITIONAL TRAINING

When I discovered that the agency had an upcoming project and training in cognitive behavioral therapy I requested to attend. I was initially denied by Mr. Williams, until he was contacted by Ms. Delores Thornton who advised him that I would be perfect for the training.

11

At which time he agreed to allow me to attend as long as I was not responsible for spearheading the follow up curriculum development.

Things became so scary for me that I began to pursue protection for any federal source available which included the following, my congressman, the president, the office of special counsel, the head of EEOC, and Office of Federal Operations, seeking some type of protection.

## DAMAGES INCURRED, EMOTIONALLY, PHYSICALLY, PSYCHOLOGICALLY, AND FINANCIALLY

These bullying behaviors lasted almost 2 years non-stop, it created additional health issues such as PTSD, panic attacks, in addition to triggering fibromyalgia. It also exacerbated other health conditions such as my depression, elevated my blood pressure, and created daily tension headaches. To date I am still being treated for panic attacks, anxiety, PTSD and depression. CSOSAs actions created irreparable harm. I have not been able to work since then. I had one failed work attempt towards the later part of 2013. I was terminated because my panic attacks were uncontrollable and caused me to blurt out inappropriately.

Being constructively discharged caused me to lose my professional standing and abolished my professional reputation, created major financial losses, which created a downward spiral of events ultimately leading to my bankruptcy and pending foreclosure. On September 1, 2015, the Social Security Administration found me disabled due to PTSD, Panic Attacks, Agoraphobia, Major Depressive Disorder, to name a few.

The emotional pain and suffering, the loss of enjoyment of life, the loss of the ability to adequately provide for my children, loss of my retirement account as I was forced to withdraw funds while awaiting to receive my disability pension benefits, loss of my home, and vehicle. No amount of money can ever undo the irreparable harm caused by the agency. Which could have simply been avoided by a reassignment.

It is a well known fact that Thomas H. Williams was no fan of teleworking as he believed that it was impossible for anybody to work from home.

It has created the necessity of multiple to medical appointments to address and somewhat manage my ongoing health conditions. In increase in medical prescription cost and fees, loss of social relationships, and the breakdown of family relationships as well, prompted suicidal thoughts periodically.

Most of which could have been avoided had I been afforded the opportunity to appropriately heal, without being harassed on a daily basis.

No one should ever be subjected to this level of egregious harm while fighting for their life. To date the following individuals have retired from the federal government. Adrienne Poteat and Thomas H Williams. They should not allowed to create such egregious violations of federal laws and escaping accountability by way of retirement.

EEO Director pleaded with me not to file my formal complaint, as it would become a case of the agency against me.

**Please note the attached documents, including medical documents confirming hostile work environment and work related stress, emails which directly contradict**

13

**management's responses of LNDRs, text messages supporting that management was aware long before a formal complaint was filed. Evidence of inexplicable deviation from standard practices, idiosyncratic or questionable agency reasons, as was as irrational agency behavior, discrepancies a reasonable juror could infer that the explanations given by the agency were pretextual, and developed over time to counter the evidence suggesting discrimination, substantial changes over time in the agency's proffered reason for its employment decisions.**

**AS A RESULT OF THE DAMAGES AND OTHER VIOLATIONS I AM SEEKING THE FOLLOWING RELIEF:**

1. 3 YEARS OF BACK PAY TO INCLUDE BONUSES AND PROMOTIONS FOLLOWING CONSTRUCTIVE DISCHARGE WITH INTEREST, TOTALLING $261,000.00 this amount does not include interest or bonuses, or cost of living increases.

2. FRONT PAY FOR THE DURATION OF MY PROFESSIONAL WORK CAREER THRU AGE 72, TO INCLUDE BONUSES, COST OF LIVING INCREASES AND RETIREMENT CONTRIBUTIONS. To be calculated by a FORENSIC ECONOMIST

3. MAXIMUM AMOUNT ALLOWED FOR COMPENSATORY AND NONCOMPENSATORY DAMAGES AS A FEDERAL EMPLOYEE FOR AN AGENCY CONSISTING OF MORE THAN 500 EMPLOYEES. THE MAXMIUM ALLOWABLE AMOUNT OF $300,000.00

4. MEDICAL PAYMENT FOR INJURIES INCURRED AS A RESULT OF THE EGREGIOUS TREATMENT CAUSED BY THE AGENCY, PTSD, AGORAPHOBIA, AND DAILY ONGOING PANIC ATTACKS, TO INCLUDE MEDICATIONS NEEDED AND ANY PSYCHOLOGICAL TREATMENT.   $1,000,000.00

5. PAYMENT OF SURGICAL COSTS IN APRIL 2011, AS THOUGHT TO BE A RECURRENCE OF CANCER CAUSED BY THE ONGOING WORKPLACE STRESS AND BULLYING BEHAVIORS. COSTS TO BE LATER SUBMITTED UPON RECEIPT FROM MEDICAL PROVIDED.

6. THE DIFFERENCE IN BACK PAY AS IT RELATES TO UNDER PAYMENT FOR ACTUAL DUTIES PERFORMED, AS THOMAS WILLIAMS FAILED TO UPDATE THE JOB POSITION. THE DUTIES PERFORMED SHOULD HAVE BEEN RATED AT A HIGHER GRADE LEVEL.   TO BE CALCULATED BY OPM.

7. RELOCATION EXPENSES, TO COVER MOVING FROM HOME TO APARTMENT, ALL COSTS AND FEES TO BE PAID IN FULL, INCLUDING RENTAL DEPOSITS AND OTHER APPLICABLE FEES

8. **TRIAL BY JURY** or media attendance

*[signature]*

MONICA E. SANTIAGO

402 BEN NEUIS PLACE

FREDERICKSBURG, VA 22405